IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARLENE B. OBLINGER, | ) | CASE NO. 3:14-CV-01447 |
| | ) | |
| Plaintiff, | ) | JUDGE ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Darlene B. Oblinger ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her applications for Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. ("Act"). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

On October 13, 2011, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of October 20, 2009. (Transcript ("Tr.") 22.) Plaintiff's claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*) On January 25, 2013, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") also participated and testified. (*Id.*) On February

15, 2013, the ALJ found Plaintiff not disabled. (Tr. 19.) On May 6, 2014, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On July 1, 2014, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 11, 14.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in evaluating the opinion of Plaintiff's treating physician, Dr. Oni; and (2) the ALJ improperly relied on non-examining physician medical opinions.

## II.     EVIDENCE

### A.     Personal and Vocational Evidence

Plaintiff was born in February 1964. (Tr. 221.) She at least a high school education and was able to communicate in English. (Tr. 88.) She had past relevant work as a dietary aide, inspector, picker/packer, appliance assembler, and vending machine attendant. (Tr. 29.)

### B.     Medical Evidence

#### 1.     Medical Reports

A February 2009 chest x-ray, obtained due to Plaintiff's complaints of shortness of breath and back pressure, was normal. (Tr. 242.)

In September 2009, Plaintiff sought treatment for an injured foot after falling off of her bicycle. (Tr. 253-255.) An x-ray showed evidence of a spiral fracture, and Plaintiff was placed in a splint and cast. (Tr. 253, 255, 257.) She was given crutches and discharged the same day. (Tr. 254.) By October 23, 2009, Plaintiff's swelling and tenderness had

improved significantly and she was converted to a walking cast. (Tr. 257.) At her next appointment on November 18, Plaintiff was ambulating "much better" with no discomfort. (*Id.*) She was converted to a fixed boot. (*Id.*)

Plaintiff saw nurse practitioner Stephanie Lorenson with the Center Street Community Clinic (Center Street) in March 2011 after running out of medication. (Tr. 311.) Plaintiff reported that she had noticed fluid in her legs and face. (*Id.*) She indicated that she had mild swelling in her legs and sometimes experienced shortness of breath after walking outside, but she had no chest pain and was able to walk on a treadmill without any difficulty. (*Id.*)

Plaintiff sought treatment with Fatima Tsalikova, M.D., at Center Street in July 2011. (Tr. 317.) Plaintiff complained of rectal bleeding. (*Id.*) She had a normal respiratory effort and normal breath sounds on examination. (*Id.*) Other physical examination findings were normal. (*Id.*)

Plaintiff saw Dr. Tsalikova again in September 2011 for a follow-up and medication refill. (Tr. 325.) Plaintiff reported that she had lost 20 pounds and had been "walking a lot." (*Id.*) She was "sometimes" short of breath and wheezy. (*Id.*) Dr. Tsalikova's respiratory examination findings remained normal. (*Id.*) Dr. Tsalikova assessed benign hypertension and prescribed medication and instructed Plaintiff to perform regular, low-impact exercise. (Tr. 325-326.)

In a December 2011 pulmonary function study, Plaintiff experienced shortness of breath after exertion. (Tr. 292.) The test revealed "moderate restrictive pulmonary disease with improvement after bronchodilator." (Tr. 298.)

Plaintiff returned to Center Street in February 2012 with a sinus infection and

complaints of shortness of breath, coughing, and wheezing.  (Tr. 335.)  She was seen by Hafusat Oni, D.O.  (Tr. 335.)  On examination, Plaintiff had unlabored breathing and mild expiratory wheezing.  (Tr. 336.)  She had a normal range of motion and intact reflexes.  (*Id.*)  Plaintiff was assessed with acute sinusitis and bronchitis.  (*Id.*)

In June 2012, Plaintiff reported to Dr. Oni that she was experiencing pain and swelling in both legs.  (Tr. 367.)  She was limping, and Dr. Oni observed an area of redness that appeared cellulitic.  (Tr. 367-368.)  Plaintiff was diagnosed with benign hypertension and "other cellulitis and abcess" in her leg.  (Tr. 368.)  Dr. Oni prescribed Bactrim.  (*Id.*)

On June 17, 2012, Plaintiff sought emergency treatment for a cough and decreased appetite.  (Tr. 377.)  An imagining study of her chest revealed no acute pulmonary process.  (Tr. 381.)  She was diagnosed with acute bronchitis and asthma and discharged home with medication.  (Tr. 377.)

On August 4, 2012, Plaintiff completed a function questionnaire.  (Tr. 235-237.)  Plaintiff reported that she was able to microwave frozen dinners, use the dishwasher, and drive locally.  (Tr. 237.)  On a typical day, she helped her sister's children get on the bus and gave her disabled mother food and medication.  (*Id.*)  She also washed clothes, helped her sister's children with their homework, read, and watched television.  (*Id.*)  Plaintiff reported that she could be on her feel for 10 minutes at a time, or less; she could remain sitting for 20 minutes before her legs began to swell; and she could lift and carry up to five pounds.  (Tr. 236.)

In August 2012, Stephen P. Povoski, M.D., evaluated Plaintiff at the Ohio State University Breast Surgical Oncology Clinic.  (Tr. 343.)  Plaintiff had complaints of right

4

breast discomfort and a familial history of breast cancer.  (Tr. 343.)  Dr. Povoski's examination was unremarkable.  (Tr. 346.)  He indicated that Plaintiff required no further diagnostic workup and recommended weight loss.  (*Id.*)

Plaintiff saw Dr. Oni in August 2012 after being sick with a cough, congestion, and headache for one week.  (Tr. 354.)  Plaintiff denied incoordination, tingling, or numbness.  (*Id.*)  Her cervical range of motion was within normal limits and she had no abnormal findings in the extremities.  (Tr. 355.)  She was wheezing but had an even and unlabored respiratory effort, and Dr. Oni diagnosed acute bronchitis and acute sinusitis.  (*Id.*)  The following month, Plaintiff reported to Dr. Oni that her asthma was "acting up" and she was "wheezing more than usual."  (Tr. 389.)  Dr. Oni diagnosed extrinsic asthma with acute exacerbation.  (Tr. 390.)

Plaintiff sought emergency treatment for ear pain in October 2012.  (Tr. 374.)  Her symptoms had begun the previous day.  (*Id.*)  She was discharged in stable condition the same day with diagnoses of sinusitis and an inner ear infection and prescriptions for medication.  (*Id.*)

The following month, Plaintiff continued to complain of right-sided ear pain and sinus issues at her next appointment with Dr. Oni.  (Tr. 396.)  Apart from those issues, Dr. Oni's physical examination findings were normal.  (Tr. 396-398.)  Plaintiff had a normal cervical range of motion, normal range of motion in both legs, normal joint stability with no tenderness in both legs, and intact reflexes.  (Tr. 397-398.)

Plaintiff had an x-ray of her left knee in December 2012 due to pain and swelling.  (Tr. 403.)  The x-ray revealed very mild medial compartment narrowing and osteophytosis.  (*Id.*)  The impression was "very early arthritic changes of the medial compartment of the

left knee." (*Id.*)

On December 31, 2012, Dr. Oni reported that Plaintiff had asthma, depression, morbid obesity, chronic low back pain, and knee pain.  (Tr. 434.)  He opined that Plaintiff was "not able to sustain a full time job due to her structural limitations," and that she could not lift over 25 pounds or bend or twist more than six times per hour.  (*Id.*)  That same date, Dr. Oni completed a "Physical Capacity Evaluation," wherein he opined that, in an eight-hour workday, Plaintiff could stand for two hours total and 15 minutes at a time; walk for one hour total and 15 minutes at a time; and sit for four hours total and 30 minutes at a time.  (Tr. 435.)  He indicated that Plaintiff could frequently lift 11-20 pounds; she could use her hands for repetitive grasping, pushing and pulling, and fine manipulation; and she could use her feet for repetitive movements.  (*Id.*)  Dr. Oni opined that Plaintiff could never climb ladders but could occasionally bend, squat, crawl, and climb steps, and she could reach above shoulder level.  (Tr. 436.)  He further opined that Plaintiff's condition would likely deteriorate if placed under stress, especially stress associated with a job, and that she would likely have five or more days per month of full or partial unscheduled absences.  (*Id.*)  Dr. Oni concluded that Plaintiff had chronic low back pain, arthritis of the knee, and morbid obesity, and that it would be "structurally difficult and challenging for her to sustain a full time job on her feet for 8 hrs a day."  (*Id.*)

### 2. Agency Reports

Plaintiff underwent a consultative psychological examination with Sudhir Dubey, Psy.D., on December 12, 2011.  (Tr. 282-288.)  Plaintiff reported her problems to include "heart problems, pulmonary problems, chronic pain and depression."  (Tr. 282.)  She reported having a good or appropriate relationship with her parents and siblings.  (*Id.*)  She

was living with her mother, sister, and her sister's children. (Tr. 283.) Plaintiff's gait was normal. (Tr. 284.) Her typical activities included "washing up, showering, changing clothes, driving, shopping for personal needs, paying bills, caring for children and caring for pets." (Tr. 285.) Plaintiff's social and recreational activities included regular interactions with family and limited activities with friends. (*Id.*) Dr. Dubey opined that in a work setting, Plaintiff would be able to: understand, remember, and carry out simple and multi-step instructions; and maintain attention, concentration, persistence, and pace to perform multi-step tasks. (Tr. 286-287.)

On January 3, 2012, Lynne Torello, M.D., reviewed the evidence of record and completed a physical residual functional capacity (RFC) assessment. (Tr. 89-91.) Dr. Torello opined that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. (Tr. 89). Dr. Torello further opined that Plaintiff could stand and/or walk for about six hours and sit for about six hours in an eight-hour workday, and was unlimited in her abilities to push and/or pull. (Tr. 90.) Dr. Torello indicated that Plaintiff could occasionally climb ramps and stairs; she could never climb ladders, ropes, or scaffolds; and she was otherwise unlimited in performing postural activities. (*Id.*) She indicated that Plaintiff should avoid concentrated exposure to extreme temperatures and humidity and avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 91.) Dr. Torello reported that she based her assessment of Plaintiff's physical capabilities on Plaintiff's COPD and morbid obesity. (Tr. 91.) On April 25, 2012, Leigh Thomas, M.D., reviewed the record and affirmed Dr. Torello's assessment. (Tr. 113-115.)

**C.    Hearing Testimony**

1.  **Plaintiff's Hearing Testimony**

Plaintiff testified that she could no longer work as of October 2009. (Tr. 42.) She stated that she broke a bone in her foot and then began experiencing deteriorating health problems. (*Id.*) She testified that the most serious health issue that prevented her from working was asthma and arthritis in her knees, right arm, and hands. (*Id.*) Plaintiff stated that she could be on her feet for less than 10 minutes, and that she could sit for 15 or 20 minutes before she needed to stand. (Tr. 43.) She stated that she spent about 70 percent of each day sitting down with her feet elevated. (Tr. 50.) Plaintiff testified that she could probably lift a gallon of milk, but with some trouble. (Tr. 44.) She also stated that she suffered from depression and had difficulty concentrating. (Tr. 45.) Plaintiff testified that she had asthma attacks several times per day, each lasting about 15-20 minutes. (Tr. 51.)

Plaintiff enjoyed reading. (Tr. 46.) She stated that she was able to dress and bathe herself and feed her cats. (Tr. 46, 52*.*) She did not cook but could heat meals, use the dishwasher, and do laundry. (Tr. 47.) She lived in a house with her mother, sister, and her sister's two children. (Tr. 39.)

2.  **Vocational Expert's Hearing Testimony**

Dr. Michael Klein, a vocational expert, testified at Plaintiff's hearing. The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and work experience, who could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk six hours out of and eight-hour day; sit six hours out of an eight-hour day; and push and pull without limits except as defined by the ability to lift and carry. (Tr. 61.) The individual could occasionally climb ramps and stairs and could never climb ladders,

ropes, or scaffolds. (*Id.*) The individual should avoid concentrated exposure to extreme hot, cold, and humidity, and should avoid even moderate exposure to fumes, odors, dust, gases, and poor ventilation. (*Id.*) The VE testified that the hypothetical individual could perform Plaintiff's past work as an inspector. (*Id.*)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment,

9

the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since October 20, 2009, the alleged onset date.

3. The claimant has the following severe impairments that can best be described as chronic obstructive pulmonary disease (COPD), asthma, hypertension, an injured left foot, and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for a total of six hours in an eight-hour day; sit for a total of six hours in an eight-hour day; and push and pull unlimited except as defined by the ability to lift and carry. She can occasionally climb ramps and stairs; can never climb ladders, ropes, and scaffolds; should avoid concentrated exposure to extreme hot, cold, and humidity; and should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation.

6. The claimant is capable of performing past relevant work as an inspector. This work does not require the performance of work-related

>
> activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 20, 2009, through the date of this decision.

(Tr. 24-30.)

## LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. The ALJ Erred in Evaluating the Opinion of Plaintiff's Treating Physician, Dr. Oni.

Plaintiff argues that the ALJ erred in evaluating the December 2012 RFC opinion of Dr. Oni, Plaintiff's treating physician. "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)). This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted). Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id*.

Dr. Oni opined that Plaintiff could: stand for two hours total in an eight-hour workday, for up to 15 minutes at a time; walk for a total of one hour in an eight-hour workday, for up to 15 minutes at a time; sit for a total of four hours in an eight-hour workday, for up to 30 minutes at a time; frequently lift 11 to 20 pounds; and occasionally

12

bend, squat, crawl, and climb steps, and never climb ladders. (Tr. 435-436.) Dr. Oni also concluded that Plaintiff's condition would likely deteriorate if placed under stress, particularly stress associated with a job, and she would likely have five or more partial or full-day unscheduled absences from work per month due to her diagnosed conditions. (Tr. 436.) Plaintiff contends that the ALJ did not give "good reasons" for assigning little weight to Dr. Oni's opinion. In assessing Dr. Oni's opinion, the ALJ explained:

> Little weight is given to the opinion by the Center Street Community Center (the author of the opinion is illegible) (Exhibit 19F) as this opinion is inconsistent with the totality of the medical evidence of record and does not provide reference to objective medical evidence to support the function-by-function analysis.

(Tr. 27.) If this were all the ALJ had said about the evidence, the case would require remand.[1]

In this case, however, the ALJ's opinion, taken as a whole, thoroughly evaluates the evidence and indicates the weight the ALJ gave it. This provides a sufficient basis for the ALJ's rejection of Dr. Oni's opinion, *see Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-71 (6th Cir. 2006), and affords this Court the opportunity to meaningfully review the ALJ's opinion. In *Nelson*, the ALJ failed to discuss the opinions of two of the plaintiff's treating physicians, and the plaintiff argued that this failure constituted a basis for remand. The Sixth Circuit disagreed, concluding that "the ALJ's evaluation of [the plaintiff's] mental impairments

---

[1] There is case law supporting the general proposition that an ALJ's broad statement rejecting a treating physician's opinion without giving specific reasons for rejecting it requires remand. See *Wilson,* 378 F.3d at 545 (finding that the ALJ's "summary dismissal" of the opinion of the claimant's treating physician failed to satisfy the "good reasons" requirement); *Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss the treating physician's opinion as incompatible with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

13

indirectly attacks both the supportability of [the treating physicians'] opinions and the consistency of those opinions with the rest of the record evidence." 195 F. App'x at 470. Because the ALJ's discussion of the other evidence "implicitly provided sufficient reasons for not giving . . . controlling weight" to the treating physicians, the Sixth Circuit concluded that the ALJ's decision satisfied the purposes of the controlling physician rule. *Id*. at 472.

Here, the ALJ provided a lengthy discussion of the medical evidence after evaluating the opinions of Plaintiff's treating physician and the other medical opinions contained in Plaintiff's record. (Tr. 25-29.) The ALJ's discussion of the medical evidence was not merely a rote recitation of Plaintiff's longitudinal history; rather, the ALJ analyzed the medical evidence and explained how it supported his ultimate RFC determination. (*Id.*) For example, the ALJ discussed the following evidence, which implicitly rejects Dr. Oni's opinions regarding Plaintiff's physical limitations:

- In December 2011, Plaintiff reported to consultative examiner Dr. Dubey that her general activities typically included washing up, showering, changing clothes, driving, shopping for personal needs, paying bills, caring for children, and caring for pets. (Tr. 25.) Dr. Dubey found that in a work setting, Plaintiff would be able to understand, remember, and carry out simple and multi-step instructions, and would be able to maintain attention, concentration, persistence, and pace to perform simple and multi-step tasks. (*Id.*)

- The ALJ explained that Plaintiff's allegations of disabling limitations were inconsistent with her reported daily activities. (Tr. 25, 29.) In August 2012, Plaintiff reported that she made sure her sister's children got on the bus for school, cared for her disabled mother, did dishes, washed clothes, fixed meals in the microwave, helped her sister's children with their homework, drove locally, read, and watched television. (Tr. 25.) The ALJ further observed that Plaintiff testified at her hearing that she watches television, shops with her sister, likes to read, cares for her personal grooming, drives, prepares meals in the microwave, and does her own laundry. (*Id.*)

- The ALJ observed that regarding Plaintiff's pulmonary condition, Plaintiff

14

had normal chest x-rays. (Tr. 28, 242, 381.) She had been treated for sinusitis, chest congestion, coughing, wheezing, and episodes of bronchitis, but she had no history of pneumonia. (*Id.*) She took medications, including inhalers, for treatment of her asthma condition. (Tr. 25.) An x-ray of her chest from February 2009 was normal. (Tr. 28.) A December 2011 pulmonary function study showed that Plaintiff was short of breath after exertion and had moderate restrictive pulmonary disease with improvement after bronchodilator. (*Id.*) Plaintiff was treated in the emergency room in June 2012 for bronchitis, but a chest x-ray showed no evidence of acute pulmonary process. (*Id.*)

- With respect to Plaintiff's left foot injury, the ALJ noted that Plaintiff's condition steadily improved. (Tr. 28, 257.) Plaintiff fractured her left foot in September 2009 and was placed in a cast. (Tr. 28.) As her injury improved, she was converted to a walking cast and then a fracture boot. (*Id.*) The ALJ noted that there was no evidence showing any complications related to Plaintiff's foot injury. (*Id.*)

- The ALJ recounted that Plaintiff had consistently normal physical examinations with a normal gait, and that in September 2011, Plaintiff reported that she had lost 20 pounds and was walking a lot. (Tr. 28, 273-275, 284, 325, 375.)

- Plaintiff complained on multiple occasions of lumps in her breasts, but testing was consistently negative/benign. (Tr. 29, 346.)

- The ALJ noted that despite Plaintiff's complaints of arthritis in several areas of her body, the evidence of record only documented mild arthritic changes in the left knee. (Tr. 29, 403.) The ALJ observed that there was lack of record evidence to demonstrate that Plaintiff needed treatment for these complaints or that she had any limitations as a result of her alleged arthritis pain. (*Id.*)

- The ALJ found that in addition to a general lack of objective evidence to support Plaintiff's subjective complaints, Plaintiff's inconsistent and exaggerated statements also weighed against her credibility. (Tr. 29.) For example, the ALJ noted that Plaintiff testified that she had to elevate her feet 70% of the day, but the record evidence did not show that any elevation was medically necessary. (*Id.*)

- The ALJ assigned great weight to the opinions of the state agency consultants, finding that their assessments were consistent with and well-supported by the evidence in the record as a whole. (Tr. 27.)

- The ALJ explained that "a careful review of the record does not

15

> document sufficient objective medical evidence to substantiate the severity of the pain and symptoms and degree of functional limitations alleged by the claimant." *(Tr. 27.)*

Thus, the ALJ did not, as Plaintiff contends, merely discount Dr. Oni's opinion without thoroughly analyzing the evidence of record. In light of the objective medical evidence, Plaintiff's daily activities, and her hearing testimony, the ALJ reasonably assigned little weight to Dr. Oni's opinion, finding that it was inconsistent with and unsupported by substantial evidence in the record. Had the ALJ discussed the aforementioned evidence immediately before or immediately after stating that he was rejecting Dr. Oni's opinion, there would be no question that the ALJ provided "good reasons" for giving Dr. Oni's opinion less than controlling weight. The fact that the ALJ did not analyze the medical evidence twice–once when analyzing the evidence of record and again when rejecting Dr. Oni's opinion–does not necessitate remand of Plaintiff's case. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)). *See also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766, n.6 (1969)). Accordingly, Plaintiff's first assignment of error is without merit.

### 2. The ALJ Improperly Relied on the Opinions of the State Agency Physicians.

Plaintiff argues that the ALJ improperly relied on the opinions of state agency

16

physicians to find that Plaintiff was not disabled. In assessing the state agency opinions of record, the ALJ wrote:

> The State Agency consultants' opinions (Exhibits 1A, 2A, 5A, and 6A) are given significant weight as the opinions are consistent with the medical record in its entirety. The State Agency consultants are well-qualified by reason of training and experience in reviewing an objective record and formulating an opinion as to limitations. The State Agency consultants are deemed to possess specific "understanding of our disability programs and their evidentiary requirements" (Social Security Ruling 96-6p). The consultants' assessments are consistent with and well supported by the evidence of the record as a whole and are accepted as an accurate representation of the claimant's physical and mental status.
>
> * * *
>
> Great weight is given to the opinion of Dr. Dubey, the consultative psychological examiner who evaluated the claimant in December 2011 (Exhibit 9F), as his opinion is consistent with the totality of the medical evidence of record that shows very little medical evidence of record related to a psychological condition.

(Tr. 27.) According to Plaintiff, the ALJ erred by not expounding upon the above statements and failing "to point to even a single consistency in support of his finding." (Plaintiff's Brief ("Pl.'s Br.") 17.) Plaintiff further maintains that the ALJ's "failure to provide good reasons sufficiently specific to make clear to subsequent reviewers the weight the ALJ gave to the opinions and the reasons for that weight amounts to reversible error." (*Id.* at 17-18.) Plaintiff's argument has no merit.

It is well established that an ALJ is not required to discuss each and every piece of evidence in the record for her decision to stand. *See, e.g., Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). However, where the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its

17

limitations in his determination of a claimant's RFC.  *See, e.g., Fleischer v. Astrue,* 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling 96-8p provides, "[t]he RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996).

      Here, the ALJ's assessment of the state agency opinions, although brief, is sufficiently clear to allow meaningful judicial review.  The aforementioned professionals were consultative examiners, not treating physicians.  As a result, the ALJ was not required to evaluate their opinions with the same standard of deference he would have applied to an opinion rendered by a treating physician.   Thus, Plaintiff's argument that the ALJ failed to provide "good reasons" for assigning weight to the state agency physicians' opinions is misplaced.  Furthermore, as this Court discussed in detail in addressing Plaintiff's first assignment of error, a review of the ALJ's decision indicates that he thoroughly evaluated the evidence of record, which implicitly supports the opinions of the state agency physicians.  The fact that the ALJ did not analyze the medical evidence for a second time when addressing these opinions does not necessitate remand of Plaintiff's case.  Accordingly, Plaintiff's second assignment of error is without merit.

## VI.  CONCLUSION

      For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

                                                       s/ *Nancy A. Vecchiarelli*
                                                        U.S. Magistrate Judge

Date: February 23, 2015

## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See** *United States v. Walters***, 638 F.2d 947 (6th Cir. 1981)**; *Thomas v. Arn***, 474 U.S. 140 (1985),** *reh'g denied***, 474 U.S. 1111 (1986).**